1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF TEXAS
2  BEAUMONT DIVISION

3
   UNITED STATES OF AMERICA | DOCKET 4:18-CR-69(7)
4                           |
                            | JULY 11, 2019
5  VS.                      |
                            | 10:35 A.M.
6                           |
   JOSE HERRERA-ESCARENO    | BEAUMONT, TEXAS
7
   -----------------------------------------------------------
8

9           VOLUME 1 OF 1, PAGES 1 THROUGH 16

10        REPORTER'S TRANSCRIPT OF VIDEO SENTENCING

11         BEFORE THE HONORABLE MARCIA A. CRONE
                UNITED STATES DISTRICT JUDGE
12
   -----------------------------------------------------------
13

14 APPEARANCES:

15 FOR THE GOVERNMENT:    WILLIAM TATUM
                          U.S. ATTORNEY'S OFFICE
16                        101 E. PARK BLVD
                          SUITE 500
17                        PLANO, TEXAS 75074

18
   FOR THE DEFENDANT:     JOHN HELMS, JR.
19                        8100 JOHN W. CARPENTER FREEWAY
                          SUITE 200
20                        DALLAS, TEXAS 75247

21

22

23

24

25

1  COURT REPORTER:         RUTH C. WEESE, RDR-CSR
                           FEDERAL OFFICIAL REPORTER
2                          300 WILLOW, SUITE 104
                           BEAUMONT, TEXAS  77701
3

4
    PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
5   TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

1                (OPEN COURT, DEFENDANT PRESENT.)

2          THE COURT: Finally this is No. 4:18-CR-69

3  (7), *United States of America versus Jose

4  Herrera-Escareno.* Are you ready to proceed?

5          MR. TATUM: William Tatum for the Government,

6  Your Honor. We are ready to proceed.

7          MR. HELMS: John Helms for Mr.

8  Herrera-Escareno and we are ready to proceed.

9          THE COURT: And has the Defendant signed the

10 video waiver form?

11         MR. HELMS: He has, Your Honor.

12         THE COURT: And let the record reflect this is

13 being translated into Spanish for the benefit of the

14 Defendant. Has the presentence report been read to the

15 Defendant in Spanish?

16         MR. HELMS: It has, Your Honor.

17         THE COURT: Have counsel and the Defendant

18 read and discussed the presentence report, including any

19 revisions?

20         MR. HELMS: We have, Your Honor.

21         THE COURT: Has counsel fully explained the

22 report to the Defendant?

23         MR. HELMS: Yes, Your Honor.

24         THE COURT: Mr. Herrera-Escareno, do you fully

25 understand the presentence report?

1           THE DEFENDANT:  Yes.
2           THE COURT:  Does counsel or the Defendant wish
3  to make any comments, additions or corrections to the
4  report?
5           MR. HELMS:  Your Honor, we have two
6  objections.  Other than that, no.
7           THE COURT:  We'll get to that in a moment.
8  Mr. Herrera-Escareno, does the report adequately cover
9  your background?
10          THE DEFENDANT:  Yes.
11          THE COURT:  Has the Government read the report
12 and does it wish to make any comments, additions or
13 corrections?
14          MR. TATUM:  The Government has read the
15 report, Your Honor.  We have no comments, additions or
16 corrections.
17          THE COURT:  You do have objections.  Do you
18 wish to argue those objections then?
19          MR. HELMS:  Yes, Your Honor.
20          THE COURT:  Go ahead.
21          MR. HELMS:  May I proceed?
22          THE COURT:  Yes.
23          MR. HELMS:  There are two objections; one is
24 for the importation of methamphetamine enhancement.  As
25 the Court is aware, this Defendant was arrested because

1  he was transporting money.  He admitted to doing it on
2  two other occasions.  But there's no evidence that he was
3  aware that anything was being imported or that he had
4  anything to do with the importation.  He was just
5  carrying money.
6       Now, obviously he has pled guilty; he
7  understands that that is a crime.  But he had nothing to
8  do with and did not conspire with people to import.  The
9  other objection --
10      THE COURT:  But you understand the case law
11 doesn't require that.  It doesn't show he has to have
12 knowledge, it just has to show that it was, in fact,
13 imported from Mexico and I think there was evidence in
14 the record that it was.
15      MR. HELMS:  Well, I understand that it may
16 have been imported at some time.  My understanding of the
17 case law is that it is not sort of a strict liability
18 issue where if it was imported at any time, say in the
19 last 20 years, handed around and eventually got to
20 someone that that means that they get the enhancement.
21      But this sort of feeds into my second
22 argument.  Because the guidelines for the importation of
23 meth say that the offense has to involve importation.
24 And if you cast the net that wide so that his offense
25 where his conduct was just carrying money from one person

1  to another, if that includes importation, then he's
2  really at a minor role.  And the guidelines are -- I
3  think this -- according to the comment of the guidelines,
4  this is a classic minor role case.  Application note 3 to
5  Section 3B1.2 says for example, a Defendant who is
6  convicted of a drug trafficking offense whose
7  participation in that offense was limited to transporting
8  or storing drugs and who is accountable under Section
9  1B1.3 only for the quantity of drugs the Defendant
10 personally transported or stored may receive an
11 adjustment under this guidelines.
12          In this case he didn't even transport or store
13 drugs; it was just money.  So I mean I think this is --
14 especially if you are going to say that his offense
15 somehow involved importing meth.  He should get a minor
16 role adjustment because all he did was transport money.
17 I think it's even conceivable that people would not
18 understand that taking money, because money is not
19 illegal from one place to another and would not be a
20 crime.  That's not an excuse.  That doesn't mean it is
21 not a crime, but it does illustrate how his role in this
22 was very minor.  There was no evidence that he had any
23 decision-making authority, that he was involved in any
24 planning or the other things that the comments on this
25 section of the guidelines reference.

1  So we would ask that the Court sustain the
2 objection for importation of meth and for minor role in
3 the offense.
4  THE COURT: Does the Government wish to
5 respond?
6  MR. TATUM: Yes, Your Honor. As to really
7 both objections, we have asked the Court to overrule
8 them. This drug trafficking organization did originate
9 out of Mexico. I believe that was the information that
10 was provided by law enforcement and this Defendant
11 contacted cooperating Defendants to coordinate the
12 delivery of currency to another on behalf of another
13 co-conspirator. He did it on I believe three occasions
14 that he admitted to. And as the PSR does point out, he
15 does not have to have knowledge of the methamphetamine
16 importation.
17  At the same time, he is part of this drug
18 trafficking organization and he did this offense and
19 that's where the methamphetamine came from. So I believe
20 that that objection should be overruled just based on the
21 case law.
22  As far as his minor role, yes, he did admit to
23 delivering the money, picking it up on behalf of the
24 conspiracy and then taking it to other unknown
25 conspirators and that that was the Ft. Worth area.

1  Although just money, the whole point of the
2 drug trafficking organization or operation is to make
3 money. That's the whole reason that these people ever
4 conspire to sell methamphetamine. So the calling
5 individuals to collect the money and then distributing it
6 to other co-defendants is just as important as delivering
7 the drugs themselves. Without the money the conspiracy
8 doesn't exist. And so I think the fact that he was able
9 to go and pick up this money, that he had that authority
10 to do it on his own, coordinate the pickup of the money
11 and then distribute it to other co-defendants should not
12 get him a minor role in this conspiracy.
13           THE COURT: I agree. I think the money is
14 what makes it all go around. There wouldn't be
15 importation or this whole thing wouldn't happen without
16 the monetary incentive to do that. So I don't think that
17 it should be downplayed because he transported money.
18 And it looks like he contacted a cooperating defendant to
19 coordinate the delivery of $10,000 from the Defendant to
20 him and then on behalf of another conspirator, it's all
21 wrapped up and an integral part of this drug trafficking
22 conspiracy of the methamphetamine that was being imported
23 from Mexico. And he did it on several occasions.
24           So I don't think -- I think his participation
25 was that of an average participant. I don't think it was

a minor role. So that's denied. And he doesn't have to know that it was imported. I suspect he did know, but there was certainly evidence in the record that the methamphetamine was from Mexico; so that objection doesn't work. So that's overruled, both objections are overruled.

To the extent the Court previously deferred acceptance of the plea agreement, it is now accepted and the judgment and sentence will be consistent with it. The Court finds the information contained in the presentence report has sufficient indicia of reliability to support its probable accuracy.

The Court adopts the factual findings, undisputed facts and guideline applications in the presentence report. Based upon a preponderance of the evidence presented and the facts in the report, while viewing the Sentencing Guidelines as advisory, the Court concludes that the total offense level is 33, the criminal history level is I, which provides for an advisory guideline range of 135 to 168 months. Does defense counsel wish to make any remarks?

MR. HELMS: Yes, Your Honor. May I proceed?

THE COURT: Yes.

MR. HELMS: Your Honor, there are several other people, other Defendants in this case, one of whom

1  has not been sentenced yet and others who are, I assume,
2  because they are still sealed, still out there. I
3  suspect that their roles will be much greater than Mr.
4  Herrera-Escareno. And although, of course, money is
5  important, I really think when you compare his conduct to
6  other people who were involved in deciding where the
7  drugs would go, benefitting financially, he would be
8  certainly one of the least involved. And so although the
9  Court has overruled the objection for a minor
10 participant, given his limited role, given his lack of
11 criminal history, I would ask the Court to sentence him
12 at the lowest end of the guidelines range.
13         THE COURT: Does the Defendant wish to make a
14 statement?
15         THE DEFENDANT: Yes. I would like to
16 apologize for what I have done for having committed this
17 crime. And I apologize; I would like to say that. I
18 would also like to apologize to my family for having made
19 such a poor decision. And thank you very much and I have
20 made that decision and I'll accept it and may God be with
21 you.
22         THE COURT: All right. Does the attorney for
23 the Government wish to make any remarks?
24         MR. TATUM: No, Your Honor.
25         THE COURT: Does counsel know of any reason

1 why sentence should not be imposed at this time?

2     MR. HELMS:  No, Your Honor.

3     MR. TATUM:  No, Your Honor.

4     THE COURT:  Pursuant to the Sentencing Reform

5 Act of 1984, having considered the factors noted in 18

6 U.S.C., Section 3553(a) and after having consulted the

7 advisory Sentencing Guidelines, it is the judgment of the

8 Court that the Defendant, Jose Herrera-Escareno, also

9 known as Nacho, is hereby committed to the custody of the

10 Bureau of Prisons to be imprisoned for 135 months on

11 Count 1 of the indictment.

12     The Court recommends to the Bureau of Prisons

13 that the Defendant receive appropriate drug treatment

14 while imprisoned.  The Court finds that the Defendant

15 does not have the ability to pay a fine.  The Court will

16 waive the fine in this case.  It is ordered the Defendant

17 must pay the United States a special assessment of $100

18 which is due and payable immediately.

19     The Defendant is ineligible for all federal

20 benefits listed in 21 U.S.C. Section 862(d) for a period

21 of one year from the date of this order.

22     After reviewing the facts and circumstances of

23 this case as well the personal history and

24 characteristics of the Defendant, the Court believes an

25 imposition of supervised release is warranted in this

1  case.  A period of supervised release will provide an
2  added measure of deterrence from future criminal conduct
3  as well as provide protection to the community.
4         Upon release from imprisonment, the Defendant
5  shall be on supervised release for a term of two years.
6  Within 72 hours of release from the custody of the Bureau
7  of Prisons, the Defendant must report in person to the
8  probation office in the district to which the Defendant
9  is released.  The Defendant must not commit another
10 federal, state or local crime and must comply with the
11 standard conditions that have been adopted by this court.
12        In addition, the Defendant must comply with
13 all applicable mandatory conditions and the following
14 special conditions:  As a condition of supervised release
15 immediately upon release from confinement the Defendant
16 shall be surrendered to a duly authorized immigration
17 official for deportation proceedings in accordance with
18 the established procedures provided by the Immigration
19 and Nationality Act, 8 U.S.C. Section 1101, et seq.  If
20 ordered deported the Defendant must remain outside the
21 United States.  In the event that the Defendant is not
22 deported or for any reason re-enters the country after
23 having been deported, the Defendant must comply with all
24 conditions of supervised release to include reporting to
25 the nearest United States probation office within

1  72 hours of release by immigration officials or re-entry
2  into the country.
3       The Defendant must provide the probation
4  officer with access to any requested financial
5  information for purposes of monitoring the Defendant's
6  efforts to obtain and maintain lawful employment.
7       The Court finds this to be a reasonable
8  sentence in view of the nature and circumstances of the
9  offenses entailing the Defendant's participation in a
10 drug trafficking conspiracy involving the distribution of
11 between 15 and 45 kilograms of a mixture or substance
12 containing a detectable amount of methamphetamine or
13 between 1.5 and 4.5 kilograms of methamphetamine actual,
14 his transporting money proceeds of drug transactions to
15 and from co-conspirators who were involved in the
16 distribution of methamphetamine that was imported from
17 Mexico, his contacting a cooperating Defendant to
18 coordinate the delivery of $10,000 in currency from the
19 cooperating Defendant to himself on behalf of a fellow
20 conspirator in March 2018, his meeting the cooperating
21 Defendant at a Denny's restaurant where the cooperating
22 Defendant provided him a plastic bag containing $10,000,
23 his admitting to picking up drug proceeds in amounts of
24 $5,000 and $10,000 on three occasions which he delivered
25 to unknown co-conspirators, his illegal presence in the

1  United States and his history of substance abuse.
2  It will serve as just punishment, promote
3  respect for the law, and deter future violations of the
4  law. Although the Court finds the guideline calculations
5  announced at the sentencing hearing to be correct, to the
6  extent they were incorrectly calculated, the Court would
7  have imposed the same sentence without regard to the
8  applicable guideline range in light of the factors set
9  forth in 18 U.S.C. Section 3553(a).
10  You have a right to appeal your conviction if
11  you believe that your guilty plea was somehow unlawful or
12  involuntary or there is some other fundamental defect in
13  the proceedings that was not waived by your guilty plea.
14  You have a statutory right to appeal your sentence under
15  certain circumstances, particularly if you think the
16  sentence is contrary to law.
17  A Defendant, however, may waive those rights
18  as part of a plea agreement; and you've entered into a
19  plea agreement which waives certain rights to appeal your
20  conviction and sentence. With the exception of the
21  reservation of the right to appeal on specified grounds
22  set forth in the plea agreement, you've waived any
23  appeal, including collateral appeal, of any error which
24  may have occurred surrounding the substance, procedure,
25  or form of the conviction and sentence in this case.

1 Such waivers are generally enforceable, but if
2 you believe the waiver is unenforceable, you can present
3 that theory to the appellate court. With few exceptions,
4 any notice of appeal must be filed within 14 days of
5 judgment being entered in your case. If you're unable to
6 pay the cost of an appeal, you may apply for leave to
7 appeal *in forma pauperis*. If you so request, the clerk
8 of the court will prepare and file a notice of appeal on
9 your behalf.
10 The presentence report is made part of the
11 record and is placed under seal except counsel for the
12 Government and defense may have access to it for purposes
13 of appeal. Are there any other counts?
14 MR. TATUM: No, Your Honor, this was a single
15 count indictment.
16 THE COURT: The Defendant is remanded to the
17 custody of the United States Marshal and then to the
18 custody of the United States Federal Bureau of Prisons to
19 begin the service of sentence. Is there a particular
20 facility you wish to request?
21 MR. HELMS: Your Honor, we would request Ft.
22 Worth.
23 THE COURT: All right. I'll recommend Ft.
24 Worth. If there is nothing further then you're excused.
25 (Proceedings concluded, 10:50 a.m.)

COURT REPORTER'S CERTIFICATION

I HEREBY CERTIFY THAT ON THIS DATE, JULY 18, 2020, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS.

*Ruth C. Weese*

_____

RUTH C. WEESE, RDR-CSR